UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06CR131 ERW |
| | ) | |
| DAMION L. TRIPP, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed his First Motion to Suppress Evidence and Statements [Doc. #62], and a hearing was held on the pretrial motions. Subsequently, a transcript and the post-trial memoranda of the parties were filed in this matter. On October 16, 2007, the undersigned held a status hearing at which the Defendant, Defendant's counsel, and Government's counsel were present. At the hearing, the Defendant, the Defendant's counsel, and Government's counsel stated that because of Judge Blanton's absence, they agreed and wished to have the matter submitted to the undersigned on the basis of the transcript of the hearing and the digital recording in this matter for report and recommendation of the undersigned. The undersigned has carefully considered the entire transcript of the hearing in this matter and has also carefully considered the digital recording, and hereby makes the following findings of fact and conclusions of law:

**Findings of Fact**

Corey Mitchell is a narcotics detective with the Poplar Bluff, Missouri Police Department, and has been employed as a police officer for twelve years. On July 5, 2006, a reliable confidential

informant contacted Mitchell and Drug Task Force Officer Jason Morgan, informing them that the Defendant Damion Tripp and a person whom the informant knew as "Frank" were selling narcotics from 1528 Garfield in Poplar Bluff, Missouri. The confidential informant had been used by Mitchell and other officers on previous occasions and the informant's information had led to the issuance of search warrants and in-court prosecutions of individuals. The confidential informant also told the officers that Tripp and Frank lived at 1528 Garfield, and that the informant had purchased narcotics from them for about the previous year.

The officers arranged to meet the informant on July 5, 2006. The informant told them that he believed he could buy crack cocaine from Frank, Damion Tripp, or whoever was present at 1528 Garfield on that date.

After meeting up with the confidential informant, the officers conducted a search of the informant's person, including his clothing and mouth, which search revealed that the confidential informant was not in possession of any controlled substances, specifically, crack cocaine. They also provided the confidential informant with $40.00 in cash, and recorded the serial numbers of the currency which they provided to the informant. In addition, the agents provided the informant with a digital tape recorder to record any transaction which occurred in the premises. The agents then drove the confidential informant to the area of 1528 Garfield, and secreted their vehicle in a location from which they could observe all of the entrances to this house, but, hopefully, could not be seen by anyone in the house. The confidential informant got out of the undercover police vehicle and Mitchell and Morgan observed the informant go to the front door of the house, enter the house, and come out of the house approximately three minutes later. The agents kept the informant in sight until he got into their undercover vehicle.

After getting into the police vehicle, the informant gave the officers a rock of crack cocaine which they field tested, discovering that it tested positive for cocaine. The informant told the officers that when he walked into the residence, Frank and his girlfriend, who he knew as Amanda, were present in the house. The confidential informant told Frank that he wanted a "forty" of crack cocaine, and Frank reached into a case that was in Amanda's purse, opening the case and handing the crack cocaine to the informant. The informant then gave Frank the $40.00 in cash, at which time the informant left the house returning to the police car. The confidential informant was searched and he did not have the $40.00 on his person. The tape recorder which the officers had given to the confidential informant either malfunctioned, or the officers made an error in the manner in which the recorder was turned off, because no recording was made of the transaction.

After the controlled purchase was completed, the officers furthered their investigation by attempting to obtain a search warrant for 1528 Garfield, in Poplar Bluff. Det. Mitchell drafted an affidavit in support of the warrant to search the location, and took it to the Butler County Prosecuting Attorney who read the affidavit and approved it to go forward to the judge. Mitchell then took the notarized affidavit to Judge Bloodworth of the Butler County Circuit Court, and presented the affidavit to him. The affidavit filed in support of the warrant to search 1528 Garfield stated in pertinent part as follows:

The affidavit stated that Mitchell was a narcotics detective and canine handler for the Poplar Bluff Police Department, and had been a police officer since 1995. Mitchell had been involved in numerous successful drug investigations. He further stated that within the previous twenty-four hours, he had met with a confidential informant who had informed him that the informant could

purchase a quantity of crack cocaine from Damion Tripp and a male named "Frank."[1] The confidential informant stated that the informant had been purchasing crack cocaine from Damion Tripp and Frank for approximately the previous year. The informant also told them that Damion Tripp and Frank live in a house directly across from the Northside Nutrition Center on Garfield Street in Poplar Bluff. The officers met with the confidential informant and searched him to make sure that he had no narcotics on his person. After determining that the results were negative for possession of narcotics, the officers provided the confidential informant with $40.00 from the Poplar Bluff narcotics fund for the purchase of the crack cocaine. They also gave the informant a Sony mini-disc audible recorder to record the transaction. The officers then drove the confidential informant to a location close to the above house and the informant got out of the vehicle. Morgan and Mitchell maintained surveillance of the confidential informant, and observed him enter the residence at approximately 9:35 p.m., and observed him to exit the residence at about 9:38 p.m., and walk directly to their vehicle. Once inside the vehicle, the informant handed a rock of what appeared to be crack cocaine to Mitchell, and Mitchell retrieved the recorder from the confidential informant, however, nothing was recorded due to a malfunction of the equipment. Morgan then field tested the rock of crack cocaine which tested positive for crack cocaine. They then asked the informant what occurred in the house, and the informant told them that Frank had retrieved a rock of crack cocaine from a black case that was in his girlfriend's purse. The informant stated that Frank's girlfriend's name was "Amanda." The officers determined that the address of the house from which the confidential

---

[1] The affidavit did not state that the confidential informant had been used by the detectives on other occasions.

informant purchased the cocaine was 1528 Garfield and described it as a white-colored wood frame single family dwelling.

Based on the above affidavit, Judge Bloodworth issued a warrant to search 1528 Garfield Street in Poplar Bluff, Missouri, and to seize controlled substances, imitation controlled substances, drug paraphernalia, records, and/or monies related to drug sales, and mail. The officers executed the search warrant on July 13, 2006. On that date, several officers, including uniformed officers, went to 1528 Garfield Street to execute the warrant. Officer Mitchell and another officer walked to the south side entrance of the building to make sure that no one exited from that location when entry was made through the north side. As Task Force Office Morgan and several other officers went to the north side of the building and started to approach the property, Mr. Tripp walked out onto the porch, observed the officers coming toward his house, ran back inside the residence, and shut the door. Morgan and a uniformed patrol officer entered the front door of the residence shortly after the Defendant fled into the residence. They found the Defendant in the bathroom of the residence, attempting to flush several bags of marijuana down the toilet bowl. Two bags of marijuana were floating in the toilet bowl and were retrieved from the toilet bowl. Further, approximately eight other bags of marijuana were retrieved from the drain in the toilet which had trapped the marijuana. The Defendant was arrested in the bathroom by Officer Morgan for possessing marijuana. Also seized from the house were the following: from the front south bedroom, eight Lidocaine patches, a sandwich bag box, a spoon with white residue, Arm & Hammer baking soda, a mirror with residue, and a crack pipe. From the front north bedroom, the officers seized one bag of marijuana, two bags of what they believed to be crack cocaine, a one gallon zip lock bag containing approximately a half pound of marijuana, and a blue marijuana smoking pipe. From the kitchen, the officers seized baggies

from a trash can. From the bathroom, as stated above, the officers seized two baggies of marijuana from the toilet bowl, and eight baggies of marijuana from the inside drain of the toilet. Further, from Damion Tripp's person, the agents seized $875.00 in cash, and digital scales.

**Conclusions of Law**

A. The Search of 1528 Garfield

Based on the above findings, the undersigned concludes that sufficient probable cause exists to authorize the issuance of the search warrant to search the Garfield address.

For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found at the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1949).

Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." See Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Illinois v. Gates, at 232. Probable cause may be based on the totality of the circumstances present. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. See

Illinois v. Gates, supra. Also, affidavits should not be read in a hypertechnical manner. See United States v. Ventresca, 380 U.S. 102 (1965). It is also clear that information from a reliable informant, without more, may provide probable cause for the issuance of a search warrant. See United States v. Pressley, 978 F.2d 1026 (8th Cir. 1982).

In addition, even an anonymous tip from a crime stoppers' hotline or information from an informant whose reliability has not been tested is sufficient information upon which to create probable cause as long as there is a sufficient factual basis provided by the person, and the statement is otherwise shown to be reliable through corroboration of even innocent details. See United States v. Briley, 726 F.2d 1301 (8th Cir. 1984).

In United States v. Ketzeback, 358 F.3d 987 (8th Cir. 2004), the affidavit for a search warrant was based on an untested informant and excluded information from the affidavit that would poorly reflect on the informant's reliability. Further, the corroboration of the informant was largely information that might be otherwise termed as innocent or innocuous. In addition, another part of the corroboration was that the defendant had been convicted of a drug violation and was on probation for the drug violation. In upholding the validity of the affidavit and the corroboration for the affidavit, the Court stated as follows:

> Second, the supplemented affidavit would show that the CI had recently witnessed the alleged dealer's sales, that he was able to give a description of the drugs and their packaging, and that he knew that Ketzeback had recently encountered police in a cemetery. These are detailed allegations that go beyond a "casual rumor circulating in the underworld." *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969). Moreover, the deputies corroborated the alleged dealer's name, address, and the details of the cemetery encounter. *Cf. Tyler*, 238 F.3d at 1039; *United States v. Buchanan*, 167 F.3d 1207, 1222 (8th Cir. 1999) (concluding that omissions, although problematic, did not destroy probable cause partly because the information was validated through independent corroboration of innocent details). It is true, as the district court observed, that this corroborated information was publicly available and established primarily that the CI knew Ketzeback.

7

> Nevertheless, independent corroboration of even innocuous facts makes it more likely an informant is telling the truth about incriminating ones, and corroboration of innocent behavior can provide the basis for establishing probable cause.

358 F.3d 987, 991, 992.

In <u>United States v. Reivich</u>, 793 F.2d 957 (8th Cir. 1986), an affidavit with little corroboration was held to be sufficient to support probable cause. The information held sufficient in <u>Reivich</u> was that two individuals of unknown reliability had provided information to the police that the defendant was their source of cocaine, and gave the general location where he lived and provided a phone number for Reivich at that location. Thus, only general details were available to corroborate the information that the defendant was dealing drugs from a house in the general area to which the informants had been followed. In upholding the sufficiency of the warrant and the corroboration, the Court stated as follows:

> Second, the information provided by Burns and Linsin was generally corroborated by police investigation. The neighborhood in which Burns and Linsin placed Reivich corresponded to the neighborhood to which the police previously had followed Burns and Linsin; the phone number provided by Burns and Linsin was listed to a residence in that same neighborhood; and police the next morning observed a car registered in Reivich's name parked in the driveway of that residence. Furthermore, the affidavit suggested that Burns and Linsin had independently told consistent stories. The theory connecting reliability and corroboration is that an informant who is correct about some things more likely will be correct about critical unverified facts,. . . and it is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details. *United States v. Thompson*, 751 F.2d 300, 302 (8th Cir. 1985).

<u>United States v. Reivich</u>, 793 F.2d 960.

In <u>United States v. Allen</u>, 297 F.3d 790 (8th Cir. 2002), the informant who had no prior record of reliability told the agents that the informant and the defendant were involved together in the production of methamphetamine, had purchased pseudoephedrine the night before, and the defendant had materials used in the production of methamphetamine stored in his house. He described the

defendant's house, told them what cars were parked out in front, told him the owner of one of the vehicles, and said that the defendant was a felon. The only information verified or corroborated of the informant's statements was the address of the house, and the owner of one of the vehicles outside the defendant's premises. In holding the affidavit and the corroboration sufficient, the court stated as follows:

> Taken together, we believe the information contained in the search warrant affidavit created a fair probability that law enforcement officers would discover further evidence of illegal drug activity at Allen's residence. The facts that Allen had twenty soda cylinders and thirty lithium batteries in his possession and that he had spent the night with Craycraft buying ephedrine/pseudoephedrine pills and looking for anhydrous ammonia establish probable cause to believe that Allen had methamphetamine manufacturing equipment and ingredients at his residence...As to Craycraft's credibility, even though he had no record as an informant, the information he provided was sufficiently credible both because his statements were against his penal interest and because the police were able to corroborate some of the information he provided. *See United States v. Taylor*, 238 F.3d 1036, 1039 (8th Cir. 2001) (corroboration of minor, innocent details can support probable cause; informant made statements against penal interest after being caught with drugs by police).

United States v. Allen, 297 F.3d 790, 794, 795. See also United States v. Underwood, 364 F.3d 956 (8th Cir. 2004) (agent could assess informant's credibility because information given in person; location of house given confirmed by independent investigation; officer had received previous tips from the hotline about drug activity at the location). As stated, either an informant or a witness who provides information to police in a face to face encounter is deemed more reliable than an anonymous informant. See United States v. Underwood, supra. (The agent could assess the informant's credibility because the information was provided in person.)

Given the above law, the undersigned concludes that ample probable cause exists for the issuance of a search warrant. In the case now at bar, a confidential informant talked directly to the police officers and told them that he had been buying crack cocaine from the Defendant Damion Tripp

9

and from a person named Frank for approximately one year's time. He further stated that he could make a "controlled purchase" of cocaine from Damion and Frank acting in an undercover capacity. Further, on the day before the search warrant was issued, the confidential informant told them that he believed he could go into Frank and Damion's house and could purchase cocaine while inside of the house. He first described the location of the house as being across from the Northside Nutrition Center on Garfield Street, and then took the officers to the house. The officers observed that the house was, in fact, in this area, and were able to discover that the address of the house was 1528 Garfield Street. In addition, the officers secured or searched the informant determining that he had no cocaine on his person, and provided him with $40.00 with which to purchase cocaine from inside of the house. They observed the informant walk to the house, stay in the house for three minutes, come directly out of the house, walk to their car, and give them a quantity of crack cocaine. The informant then described in detail what happened while inside of the house. The undersigned concludes that this is the same type of detailed information provided in face-to-face discussions that was held sufficient to support probable cause in <u>Reivich</u>, <u>Ketzeback</u>, and <u>Allen</u>, <u>supra</u>

The undersigned also concludes that the controlled purchase of the cocaine by the informant acting in an undercover capacity provided strong corroboration for the fact the informant had purchased cocaine inside of the premises on July 5, 2006. When the informant left the vehicle, he had no cocaine on his person, and returned after three minutes inside of the house without leaving the house, and gave the officers $40.00 worth of cocaine, stating that he purchased the cocaine for $40.00 inside of the house from Frank. The undersigned concludes this provides strong corroboration for the informant's statements that he had been purchasing cocaine for more than a year from Frank and Damion Tripp, and that he purchased cocaine from them inside of the house on July

10

5, 2006. Further, the officers were able to corroborate the fact that the residence from where the informant purchased the cocaine was located across from the Northside Nutrition Center and that the address was 1528 Garfield Street. The undersigned concludes that this corroboration, which goes to the very heart of the allegation of cocaine being present on the premises, was significantly more substantial than the corroboration in <u>Reivich</u>, <u>Ketzeback</u>, or <u>Allen</u>, <u>supra</u>.

Further, the undersigned concludes that the fact that the cocaine was obtained by Frank from a case inside of his girlfriend's purse does not negate or lessen the probable cause merely because a purse can be moved. Taken as a whole, the affidavit states that the informant had been purchasing cocaine for more than a year from Frank and the Defendant, and that they lived at 1528 Garfield Street. This, along with the corroboration of the undercover buy taking place in the house where they resided within one day of the warrant being issued, leads the undersigned to conclude that there was at least a "fair probability" that cocaine, drug paraphernalia, or drug packaging material would be found on the premises of 1528 Garfield Street. The information was amply corroborated and was, at most, one day old. Under these circumstances, the undersigned concludes that there was sufficient probable cause to authorize the issuance of the search warrant.

The undersigned also concludes that the warrant was executed in a lawful manner. In so holding, the undersigned concludes that the officers had "reasonable suspicion" that evidence might be destroyed or lost had they not entered the premises immediately after the Defendant fled from them closing the door in their face. In <u>United States v. Banks</u>, 540 U.S. 31 (2003), the Court stated as follows in holding that officers need not announce their presence when entering pursuant to a search warrant under exigent circumstances:

> In *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), we held that the common law knock-and-announce principle is one focus of the

> reasonableness inquiry; and we subsequently decided that although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit effective investigation of the crime, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). When a warrant applicant gives reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a "no-knock" entry. And even when executing a warrant silent about that, if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in. . .

540 U.S. 31, 36-37. See also United States v. Ramirez, 523 U.S. 65 (1998); Richards v. Wisconsin, 520 U.S. 385 (1997).

Given the above law, the undersigned concludes that the entry of the premises without announcing the authority of the search warrant was lawful. In the case now at bar, the officers, when approaching the residence, observed the Defendant come out of his residence onto the front porch, observe a significant number of police officers approaching his residence, and flee or run back into his house, closing the door in their face. Under these circumstances and being aware that they were searching for drugs or narcotics that could easily be disposed of either in a sink or in a commode, the officers, at this point, possessed, at the very least, a reasonable suspicion that the Defendant might be fleeing back into his house and impeding their entry so that he could destroy the evidence of his drug crimes. This being the case, they were justified in quickly entering the house without knocking or announcing their presence. Therefore, the entry was lawful.

### B. Issues Involving *Franks v. Delaware*

Although the Defendant conceded at the motion hearing that he probably did not make a sufficient showing to require that a hearing contemplated by a case of Franks v. Delaware, 438 U.S. 154 (1978) be held, the undersigned will nevertheless briefly review the law and facts pertaining to

this matter. The law regarding false information in an affidavit was first stated by the Supreme Court in Franks v. Delaware, supra. In formulating the Franks standard in this Circuit, the Eighth Circuit Court of Appeals stated as follows:

> To succeed in a *Franks*-type challenge of the validity of a search warrant, the Defendant must establish by a preponderance of the evidence that the affiant either intentionally or with reckless disregard for the truth included a false statement within the search warrant affidavit. . .The same analysis applies to omissions of fact. The defendant must show that the facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading. . .The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the affidavit's remaining contents are sufficient to establish probable cause. . .Mere negligence or innocent mistake is insufficient to void a warrant.

United States v. Clapp, 46 F.3d 795, 799 (8th Cir. 1995).

For an affidavit to be truthful does not mean "'truthful' in the sense that every fact recited in the warrant . . .is correct. . ." Clapp, supra at 800. Rather, in order to determine whether or not a false statement in an affidavit was intentional or reckless, the defendant must show that "the affiant 'in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein.'" United States v. Clapp, 46 F.3d 795, 801. In Clapp, supra, the court held that two statements in affidavits were misleading, inappropriate, and inaccurate, but nevertheless were not intentional or reckless, and therefore did not rise to intentional deletion of material from an affidavit.

In the case now at bar, the Defendant attempted to meet the Franks standard by testifying at the motion hearing in this case. At the motion hearing, the Defendant testified that he was present at a preliminary hearing in circuit court in Butler County in this matter, and heard Det. Mitchell testify that he was present in 1528 Garfield on July 5, 2006, the date that the confidential informant made the undercover purchase from Frank with Amanda present at the house. The Defendant stated he was

not at the house on July 5, 2006, but instead was in Kansas City. Det. Mitchell testified at the motion hearing in this case that he may have mistakenly testified at the preliminary hearing in Butler County that the Defendant was present on July 5, 2006, because he may have mistakenly believed he was being questioned about the date of the search warrant, July 13, 2006, rather than the date of the undercover purchase, July 5, 2006. The undersigned concludes that in either case, there was no false statement in the affidavit regarding whether the Defendant was present on July 5, 2006. The affidavit filed by Det. Mitchell clearly indicated that Frank and Amanda were present on the premises, and did not in any way state that the Defendant was present on July 5, 2006. Therefore, there was no false statement in the affidavit in this regard, and whatever statement may have been made at the preliminary hearing would have no bearing on whether or not there is probable cause for the affidavit or if false statements were made in the affidavit. In addition, the Defendant stated that Frank's girlfriend's name was later determined to be Amber and not Amanda, and this was a false statement in the affidavit. Even if this statement in the affidavit is incorrect, the officer was depending on information obtained by the confidential informant, and there is no indication Det. Mitchell in any way knowingly or recklessly falsely stated that Frank's girlfriend's name was Amanda while knowing it was Amber. In addition, there is no information that the informant falsely told Det. Mitchell that the girlfriend's name was Amanda, knowing that in truth and in fact it was Amber. Further, the undersigned concludes that this statement has no effect on the probable cause in this matter which related only to whether or not crack cocaine would have been in the premises on the day the search warrant was issued. The affidavit states that the Defendant obtained this crack cocaine from Frank, and even if the information about Amanda was deleted from the affidavit, it would have no effect on

the probable cause in this case. Therefore, for the above reasons, the Defendant's Franks allegations must fail.

## Conclusion

Therefore, for the reasons stated above, the Defendant's motion to suppress should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that First Motion to Suppress Evidence and Statements [Doc. #62] be **DENIED**.

The parties are advised that they have until October 30, 2007, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of October , 2007.